# EXHIBIT A

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF POTTAWATTAMIE COUNTY, IOWA

| | |
|---|---|
| OSHLO-WILKINSON DAIRY QUEEN, an Iowa Partnership, | CASE NO. _____ |
| PLAINTIFF, | |
| V. | |
| AMERICAN DAIRY QUEEN CORPORATION, | **PETITION** |
| DEFENDANTS. | **JURY DEMANDED** |

COMES NOW Oshlo-Wilkinson Dairy Queen ("Oshlo-Wilkinson") and for its Petition against Defendant American Dairy Queen Corporation ("ADQ"), states as follows:

### PARTIES

1.      Plaintiff Oshlo-Wilkinson is an Iowa general partnership with its principal business address located at 109 Sleepy Hollow, Council Bluffs, Iowa, 51503.

2.      Defendant ADQ is a Delaware Corporation, which is authorized to do business in the State of Iowa and is principally located in Bloomington, Minnesota.

### JURISDICTION

3.      Jurisdiction is proper in this Court, pursuant to Iowa Code §§ 602.6101 *et seq* and under Iowa Code § 617.3, as ADQ and Oshlo-Wilkinson entered into a contract to be performed in Pottawattamie County, Iowa.

4.      Venue is proper in Pottawattamie County, Iowa pursuant to Iowa Code § 616.7 as the agreement at issue in this lawsuit was entered into and was performed in Pottawattamie County,

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

Iowa.

## FACTUAL BACKGROUND

***A.***     ***History of Oshlo-Wilkinson Dairy Queen Franchise***

5.     In 1939, J.F. McCullogh ("McCullogh") and Harry Oltz ("Oltz") entered into an agreement (the "patent agreement") for the use of a patented frozen custard dispenser invented by Oltz to be used to dispense the McCullogh family's homemade ice cream in the first Dairy Queen store in Joliet, Illinois ("McCullogh's Dairy Queen").

6.     In approximately 1946, ADQ's predecessor McCullogh's Dairy Queen entered into a licensing agreement with Gerald A. Lowrance ("Lowrance") and Paul W. Wilkinson assigning McCullogh's rights in the patent agreement to use the soft serve ice cream dispenser in Dairy Queen stores in Pottawattamie County, Iowa (the "License Agreement"). Attached hereto, marked **Exhibit A**, and incorporated herein by this reference is a true and correct copy of the License Agreement.

7.     The License Agreement also gave Lowrance and Wilkinson the exclusive right to use the name "Dairy Queen" in Pottawattamie County, Iowa.

8.     In 1947, Lowrance and Wilkinson opened their first Dairy Queen store in Pottawattamie County, Iowa, which, at the time, was the tenth Dairy Queen store in the United States, and became the exclusive territory operators and sub-franchisor for Dairy Queen stores located in Pottawattamie County, Iowa.

9.     Since approximately 1954, ten Dairy Queen stores were given the right under the License Agreement to own, operate, and develop fast food restaurants under the name "Dairy

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

Queen" in Pottawattamie County, Iowa.

10.     In 1986, Doug Oshlo and Elizabeth Oshlo, purchased Lowrance's fifty-percent ownership interest in the License Agreement, and shortly thereafter, the Oshlos formed the Oshlo-Wilkinson partnership and served as its general partners.

**B.     *The Dairy Queen store located at 32nd and Broadway in Pottawattamie County, Iowa***

11.     In 1994, Oshlo-Wilkinson moved its Dairy Queen store to a new location, which was located at 3210 W. Broadway, Council Bluffs, Pottawattamie County, Iowa ("Broadway DQ") and was situated on real property owned by Doug Oshlo.

12.     After notifying ADQ that Oshlo-Wilkinson was moving the physical location of its Dairy Queen store, ADQ assigned the Broadway DQ a new store number, #19071.

13.     Oshlo operated the Broadway DQ from 1994 until selling it to 3210 W. Broadway DQ, LLC on January 2, 2025.

14.     On January 2, 2025, 3210 W. Broadway DQ, LLC and its member, Dianna Dieatrick, entered into a franchise agreement with Oshlo-Wilkinson to operate the Broadway DQ. As a part of this transaction, on January 3, 2025, 3210 W. Broadway DQ, LLC purchased the real property on which the Broadway DQ was situated from Doug Oshlo.

15.     On January 13, 2025, Oshlo-Wilkinson promptly notified ADQ that Oshlo-Wilkinson had transferred the right to operate the Broadway DQ to 3210 W. Broadway DQ, LLC. At or about that time, Oshlo-Wilkinson provided ADQ with the documents effectuating the transfer.

16.     In July 2025, ADQ informed Oshlo-Wilkinson that it would only approve the

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

transfer of ownership of the Broadway DQ if the new owner, 3210 W. Broadway DQ, LLC, would agree to enter into a direct franchise agreement with ADQ.

17.     In addition to ADQ requiring 3210 W. Broadway DQ, LLC to enter into a direct franchise agreement with ADQ, ADQ also demanded that 3210 W. Broadway DQ, LLC pay an up front fee of $45,000.00, as well as a franchise fee of either 4% or 5% of the gross sales and an addition 5% of marketing.

18.     For more than the past 70 years prior to receiving this notice, Oshlo-Wilkinson and its predecessor had successfully transferred the right to operate Dairy Queen stores within its territory and entered into franchise agreements with transferees.

19.     There is no provision in the License Agreement which requires ADQ to consent to Oshlo-Wilkinson's transfer of operation rights of Dairy Queen stores within Oshlo-Wilkinson's territory.

### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

20.     Plaintiff Oshlo-Wilkinson incorporates by reference each of its foregoing allegations, as if fully set forth herein.

21.     This cause of action is brought by Oshlo-Wilkinson against ADQ pursuant to and in accordance with Iowa R. Civ. P. 1.1101, *et seq.*, for the purpose of having the District Court for Pottawattamie County, Iowa declare the rights, status an other legal relations of the parties.

22.     A declaratory judgment in this matter is ripe for adjudication and will terminate the controversy giving rise to this action.

23.     The Iowa Franchise Act, Iowa Code Chapter, Chapter 523H applies to franchise

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

agreements entered into before July 1, 2000.

24.    Iowa Code § 523H.5 of the Iowa Franchise Act governs the transfer of ownership of franchises within the state of Iowa.

25.    Iowa Code § 523H.5.4 of the Iowa Franchise Act allows a franchisee to transfer a franchisee's interest in the franchise, "for the unexpired term of the franchise agreement, and a franchisor shall not require a franchisee or the transferee to enter into a new or different franchise agreement as a condition of the transfer."

26.    The License Agreement that governs the contractual relationship between Oshlo-Wilkinson and ADQ was entered into in 1946.

27.    The License Agreement is not limited in duration and does not contain a clause requiring that ADQ consent to the transfer of ownership of Oshlo-Wilkinson franchises.

28.    The License Agreement grants Oshlo-Wilkinson the exclusive right to use the name "Dairy Queen" and operate a fast food business under the "Dairy Queen" name in Pottawattamie County, Iowa.

29.    Pursuant to the License Agreement and for over 70 years prior to this year, Oshlo-Wilkinson has served as a Territory Operator and has had the exclusive right to authorize the operations of existing Dairy Queen franchises and new Dairy Queen franchises in Pottawattamie County, Iowa.

30.    There is no provision in the License Agreement which requires a franchisee within Oshlo-Wilkinson's exclusive territory to enter into a franchise agreement with ADQ, following Oshlo-Wilkinson's transfer of operation rights to the franchisee.

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

31.    There is no provision in the License Agreement which requires a franchisee to pay an up front fee of $45,000.00 or a franchise fee of either 4% or 5% of the gross sales and an addition 5% of marketing, following Oshlo-Wilkinson's transfer of operation rights to the franchisee.

WHEREFORE Oshlo-Wilkinson prays that this Court enter an Order, awarding it costs and reasonable attorney fees as permitted by Iowa Code § 523H.13, and declaring that:

(a)    The License Agreement is a valid, binding, and enforceable agreement;

(b)    Oshlo-Wilkinson has the exclusive right to use the Dairy Queen name within Pottawattamie County, Iowa;

(c)    Oshlo-Wilkinson has the exclusive right to operate Dairy Queen stores within Pottawattamie County, Iowa;

(d)    Oshlo-Wilkinson has the exclusive right to develop, own, operate and authorize others to operate fast food restaurants under the "Dairy Queen" name;

(e)    The License Agreement does not require that Oshlo-Wilkinson obtain ADQ's consent when transferring ownership of franchises within Oshlo-Wilkinson's territory;

(f)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee entering into a new and direct franchise agreement with ADQ;

(g)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee within Oshlo-Wilkinson's exclusive territory to enter into a franchise agreement with ADQ, following Oshlo-Wilkinson's transfer of operation rights to the

6

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

franchisee paying an up front fee or an increased franchise or marketing fee;

(h)     The Iowa Franchise Act, Iowa Code Chapter, Chapter 523H governs the License Agreement that is the subject of this cause of action;

(i)     The Iowa Franchise Act, Iowa Code § 523H.5.4 prohibits ADQ from conditioning 3210 W. Broadway DQ, LLC to enter into a new and direct franchise agreement with ADQ; and

(j)     Award such further and different relief as the Court deems appropriate, under the circumstances.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

32.     Plaintiff Oshlo-Wilkinson incorporates by reference each of its foregoing allegations, as if fully set forth herein.

33.     The License Agreement is a valid, binding, and enforceable agreement.

34.     ADQ breached the License Agreement when it refused  to process Oshlo-Wilkinson's transfer of operation rights from Oshlo-Wilkinson to 3210 W. Broadway DQ, LLC.

35.     ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC entering into a new and direct franchise agreement with ADQ.

36.     ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an up front fee to ADQ.

37.     ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

paying an increased franchise fee to ADQ.

38.     ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an increased marketing fee to ADQ.

39.     As a direct and proximate result of ADQ's breach of the License Agreement, Oshlo-Wilkinson sustained damages in an amount to be proven at trial.

WHEREFORE Oshlo-Wilkinson prays that this Court enter an Order awarding damages to Oshlo-Wilkinson in an amount to be proven at trial, along with its costs and reasonable attorney fees as permitted by Iowa Code § 523H.13 and law.

Dated this 7th day of November, 2025.

OSHLO-WILKINSON DAIRY QUEEN, an Iowa Partnership.
Plaintiff,

By:    */s/Adam J. Wachal*_____
    Adam Wachal, ATT0010448
    Jessica L. Weborg, ATT0013964
    KOLEY JESSEN P.C., LLO
    1125 South 103 Street, Suite 800
    Omaha, NE  68124
    (402) 390-9500
    (402) 390-9005 (facsimile)
    Adam.Wachal@koleyjessen.com
    Jessica.Weborg@koleyjessen.com
    *Attorneys for Plaintiff*

4928-6715-5831.3

8

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

/s/  Harry C. Grell _____   RECORDER OF DEEDS

65647

This agreement made and entered into this __4_ day of_May_ 1946

between J.F.McCullough party of the first part,and _Gerald A. Lowrance_

_and Paul W. Wilkinson _____ Parties of the second part

WHEREAS Hugh A.McCullough holds a contract with Harry M.

Oltz giving him the use of a certain patent on an Ice Cream freezer

in a number of states in the United States,among which is the state

of Iowa..

AND WHEREAS by virtue of said agreement, Hugh A.McCullough

has assigned to his father,J.F.McCollough the state of Iowa for

operation of the business guaranteed to him under the contract

with Harry M.Oltz,the said J.F.McCullough is now desirious of extend-

ing to the parties of the second part herein the county of Potta-

wattamie certain rights which he now owns under said contract with

Harry M.Oltz, assigned to him by Hugh A.McCullough to the said

party of the second party herein for a certain consideration.  This

consideration is the payment of $2937.26 as follows; $1468.63 cash

and the balance to be paid at the rate of 30 cents per gallon

on all the mix used, the minimum to be 4000 gallons annually until

fully paid.

The party of the second part is to have the right to

build these machines anywhere he chooses but must not move them

out of Pottawattamie County.  The parties of the second part is to

have the exclusive right to use the name "Dairy Queen" in said

county.  He also agrees to keep a record of all mix used, and to

allow either J.F.McCullough,Harry M.Oltz or their representatives

to examine these records at any time for the purpose of determin-

ing the royalties due.  Royalties to be paid monthly at the rate

of 4 cents per gallon.  All freezers are to be the property of

# EXHIBIT A

- 2 -

Book 1085 Page 150

the party of the second part.  The party of the first part is
not to be liable under this contract to defend the patent which
belongs to Harry M.Oltz.

/s/  J. F. McCullough

/s/  Gerald A. Lowrance

/s/  Paul W. Wilkinson

STATE OF IOWA              )
                           )  SS
POTTAWATTAMIE COUNTY       )

On this the 17th day of March, 1953, before me, James F. Mulqueen
a Notary Public in and for Pottawattamie County, Iowa, personally
appeared Gerald A. Lowrance and Paul W. Wilkinson to me known to
be the identical persons named and who executed the foregoing in-
strument and acknowledged that they executed same as their volun-
tary act and deed.

./s/.James.F..Mulqueen............
Natary Public

(Seal)

EXHIBIT A

E-FILED  2025 NOV 07 5:09 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF POTTAWATTAMIE COUNTY, IOWA

| | |
|---|---|
| OSHLO-WILKINSON DAIRY QUEEN, an Iowa Partnership, | CASE NO. _____ |
| PLAINTIFF, | |
| V. | |
| AMERICAN DAIRY QUEEN CORPORATION, | **ORIGINAL NOTICE** |
| DEFENDANTS. | |

TO THE ABOVE-NAMED DEFENDANT:


You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the petition (and any documents filed with it) is attached to this notice. The name and address of the attorney for the plaintiff is Adam J. Wachal, 1125 South 103rd Street, Suite 800, Omaha, NE 68124.  The attorney's phone number is 402-390-9500;  facsimile number:  402-390-9005.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Pottawattamie County, at the county courthouse in Council Bluffs, Iowa.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 712-328-4753.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).


CLERK OF THE COURT
Pottawattamie County Courthouse
Council Bluffs, Iowa 51502

## IMPORTANT
YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

4932-2002-7000.1

# Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **LACV127235** |
| *County* | **Pottawattamie** |

*Case Title*   OSHLO WILKINSON DAIRY QUEEN V AMERICAN DAIRY

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(712) 328-4753** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **11/10/2025 08:15:42 AM**



*District Clerk of Court or/by Clerk's Designee of* Pottawattamie    *County*
**/s/ DeAnne Nadler**

E-FILED          LACV127235 - 2025 NOV 10 08:46 AM          POTTAWATTAMIE
CLERK OF DISTRICT COURT                    Page 1 of 2

CA4013

State of Iowa, District Court POTTAWATTAMIE County

| | |
|---|---|
| OSHLO WILKINSON DAIRY QUEEN<br>    Plaintiff / Petitioner<br>  vs.<br>AMERICAN DAIRY QUEEN<br>    Defendant / Respondent | CASE NO. 04781  LACV127235<br><br>ORDER FOR INDIVIDUAL CASE ASSIGNMENT |

IT IS ORDERED:

Judge Justin R. Wyatt is designated as the Judge to preside over all future proceedings in this case.

If there are pending matters that should be determined before the trial/hearing, counsel shall promptly bring those matters to the attention of the presiding Judge.

/s/ Jane O'Connell, Judicial Operations Coordinator
712-328-5750

Copies to:

ADAM J. WACHAL

E-FILED          LACV127235 - 2025 NOV 10 08:46 AM          POTTAWATTAMIE
CLERK OF DISTRICT COURT          Page 2 of 2



State of Iowa Courts

**Case Number**          **Case Title**
LACV127235               OSHLO WILKINSON DAIRY QUEEN V AMERICAN DAIRY
**Type:**                OTHER ORDER

So Ordered

*Jane O'Connell*

Jane O'Connell, Court Administration Designee
Fourth Judicial District of Iowa

Electronically signed on 2025-11-10 08:46:11

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF POTTAWATTAMIE COUNTY, IOWA

| | |
|---|---|
| OSHLO-WILKINSON DAIRY QUEEN, an Iowa Partnership,<br><br>               PLAINTIFF,<br><br>V.<br><br>AMERICAN DAIRY QUEEN CORPORATION,<br><br>               DEFENDANTS. | CASE NO. LACV127235<br><br><br>**FIRST AMENDED PETITION**<br><br>**JURY DEMANDED** |

COMES NOW Oshlo-Wilkinson Dairy Queen ("Oshlo-Wilkinson") and for its First Amended Petition against Defendant American Dairy Queen Corporation ("ADQ"), states as follows:

### PARTIES

1.　　　Plaintiff Oshlo-Wilkinson is an Iowa general partnership with its principal business address located at 109 Sleepy Hollow, Council Bluffs, Iowa, 51503.

2.　　　Defendant ADQ is a Delaware Corporation, which is authorized to do business in the State of Iowa and is principally located in Bloomington, Minnesota.

### JURISDICTION

3.　　　Jurisdiction is proper in this Court, pursuant to Iowa Code §§ 602.6101 *et seq* and under Iowa Code § 617.3, as ADQ and Oshlo-Wilkinson entered into a contract to be performed in Pottawattamie County, Iowa.

4.　　　Venue is proper in Pottawattamie County, Iowa pursuant to Iowa Code § 616.7 as the agreement at issue in this lawsuit was entered into and was performed in Pottawattamie County, Iowa.

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## FACTUAL BACKGROUND

**A.**     *History of Oshlo-Wilkinson Dairy Queen Franchise*

5.     In 1939, J.F. McCullogh ("McCullogh") and Harry Oltz ("Oltz") entered into an agreement (the "patent agreement") for the use of a patented frozen custard dispenser invented by Oltz to be used to dispense the McCullogh family's homemade ice cream in the first Dairy Queen store in Joliet, Illinois ("McCullogh's Dairy Queen").

6.     In approximately 1946, ADQ's predecessor McCullogh's Dairy Queen entered into a licensing agreement with Gerald A. Lowrance ("Lowrance") and Paul W. Wilkinson assigning McCullogh's rights in the patent agreement to use the soft serve ice cream dispenser in Dairy Queen stores in Pottawattamie County, Iowa and to produce and sell ice cream at those stores in exchange for a royalty (the "License Agreement"). Attached hereto, marked **Exhibit A**, and incorporated herein by this reference is a true and correct copy of the License Agreement.

7.     The License Agreement also gave Lowrance and Wilkinson the exclusive right to use the name "Dairy Queen" in Pottawattamie County, Iowa.

8.     In 1947, Lowrance and Wilkinson opened their first Dairy Queen store in Pottawattamie County, Iowa, which, at the time, was the tenth Dairy Queen store in the United States, and became the exclusive territory operators and sub-franchisor for Dairy Queen stores located in Pottawattamie County, Iowa.

9.     Since approximately 1954, ten Dairy Queen stores were given the right under the License Agreement to own, operate, and develop fast food restaurants under the name "Dairy Queen" on real property owned by the franchisees (or entities formed by the franchisees) in Pottawattamie County, Iowa.

10.     In 1986, Doug Oshlo and Elizabeth Oshlo, purchased Lowrance's fifty-percent

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

ownership interest in the License Agreement, and at or about that time, the Oshlos formed the Oshlo-Wilkinson partnership.

11.    The Oshlo-Wilkinson partnership was formed to serve as both the owners of the interests conveyed under the License Agreement and the exclusive territory operators of Dairy Queen stores in Pottawattamie County Iowa with the exclusive right to subfranchise Dairy Queen stores in that county.

**B.    The Dairy Queen store located at 32nd and Broadway in Pottawattamie County, Iowa**

12.    In 1994, Oshlo-Wilkinson moved its Dairy Queen store to a new location, which was located at 3210 W. Broadway, Council Bluffs, Pottawattamie County, Iowa ("Broadway DQ") and was situated on real property owned by Doug Oshlo.

13.    After notifying ADQ that Oshlo-Wilkinson was moving the physical location of its Dairy Queen store, ADQ assigned the Broadway DQ a new store number, #19071.

14.    Oshlo operated the Broadway DQ from 1994 until selling it to 3210 W. Broadway DQ, LLC on January 2, 2025.

15.    On January 2, 2025, 3210 W. Broadway DQ, LLC and its member, Dianna Dieatrick, entered into a franchise agreement with Oshlo-Wilkinson to operate the Broadway DQ. As a part of this transaction, on January 3, 2025, 3210 W. Broadway DQ, LLC purchased the real property on which the Broadway DQ was situated from Doug Oshlo.

16.    On January 13, 2025, Oshlo-Wilkinson promptly notified ADQ that Oshlo-Wilkinson had transferred the right to operate the Broadway DQ to 3210 W. Broadway DQ, LLC. At or about that time, Oshlo-Wilkinson provided ADQ with the documents effectuating the transfer.

17.    In July 2025, ADQ informed Oshlo-Wilkinson that it would only approve the

3

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

transfer of ownership of the Broadway DQ if the new owner, 3210 W. Broadway DQ, LLC, would agree to enter into a direct franchise agreement with ADQ.

18.     In addition to ADQ requiring 3210 W. Broadway DQ, LLC to enter into a direct franchise agreement with ADQ, ADQ also demanded that 3210 W. Broadway DQ, LLC pay an up front fee of $45,000.00, as well as a franchise fee of either 4% or 5% of the gross sales and an addition 5% of marketing.

19.     For more than the past 70 years prior to receiving this notice, Oshlo-Wilkinson and its predecessor had successfully transferred the right to operate Dairy Queen stores within its territory and entered into franchise agreements with transferees.

20.     There is no provision in the License Agreement which requires ADQ to consent to Oshlo-Wilkinson's transfer of operation rights of Dairy Queen stores within Oshlo-Wilkinson's territory.

### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

21.     Plaintiff Oshlo-Wilkinson incorporates by reference each of its foregoing allegations, as if fully set forth herein.

22.     This cause of action is brought by Oshlo-Wilkinson against ADQ pursuant to and in accordance with Iowa R. Civ. P. 1.1101, *et seq.*, for the purpose of having the District Court for Pottawattamie County, Iowa declare the rights, status an other legal relations of the parties.

23.     A declaratory judgment in this matter is ripe for adjudication and will terminate the controversy giving rise to this action.

24.     Iowa Code § 523H.5 (hereinafter, the "Iowa Franchise Statutes") governs the transfer of ownership of franchises within the state of Iowa.

25.     Iowa Code § 523H.5.4 of the Iowa Franchise Statutes allows a franchisee to transfer

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

a franchisee's interest in the franchise, "for the unexpired term of the franchise agreement, and a franchisor shall not require a franchisee or the transferee to enter into a new or different franchise agreement as a condition of the transfer."

26.    The License Agreement that governs the contractual relationship between Oshlo-Wilkinson and ADQ was entered into in 1946.

27.    The License Agreement constitutes a Franchise agreement under Iowa law.

28.    The Iowa Franchise Statutes govern the License Agreement.

29.    The License Agreement is not limited in duration and does not contain a clause requiring that ADQ consent to the transfer of ownership of Oshlo-Wilkinson franchises.

30.    The License Agreement grants Oshlo-Wilkinson the exclusive right to use the name "Dairy Queen" and operate a fast food business under the "Dairy Queen" name in Pottawattamie County, Iowa.

31.    Pursuant to the License Agreement and for over 70 years prior to this year, Oshlo-Wilkinson has served as a Territory Operator and has had the exclusive right to authorize the operations of existing Dairy Queen franchises and new Dairy Queen franchises in Pottawattamie County, Iowa.

32.    There is no provision in the License Agreement which requires a franchisee within Oshlo-Wilkinson's exclusive territory to enter into a franchise agreement with ADQ, following Oshlo-Wilkinson's transfer of operation rights to the franchisee.

33.    There is no provision in the License Agreement which requires a franchisee within Oshlo-Wilkinson's exclusive territory to pay an upfront fee to ADQ or an increased marketing or franchise fee, following Oshlo-Wilkinson's transfer of operation rights to the franchisee.

34.    There is no provision in the License Agreement which requires a franchisee to pay

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

an up front fee of $45,000.00 or a franchise fee of either 4% or 5% of the gross sales and an addition 5% of marketing, following Oshlo-Wilkinson's transfer of operation rights to the franchisee.

35.    Under the Iowa Franchise Statutes, ADQ is prohibited from conditioning the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC entering into a new and direct franchise agreement with ADQ.

36.    Under the Iowa Franchise Statutes, ADQ is prohibited from conditioning the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an up front fee to ADQ.

37.    Under the Iowa Franchise Statutes, ADQ is prohibited from conditioning the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an increased franchise fee to ADQ.

38.    Under the Iowa Franchise Statutes, ADQ is prohibited from conditioning the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an increased marketing fee to ADQ.

WHEREFORE Oshlo-Wilkinson prays that this Court enter an Order, awarding it costs and reasonable attorney fees as permitted by law, and declaring that:

(a)    The License Agreement is a valid, binding, and enforceable agreement;

(b)    The License Agreement is a Franchise agreement under Iowa law;

(c)    Oshlo-Wilkinson has the exclusive right to use the Dairy Queen name within Pottawattamie County, Iowa;

(d)    Oshlo-Wilkinson has the exclusive right to operate Dairy Queen stores within Pottawattamie County, Iowa;

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

(e)    Oshlo-Wilkinson has the exclusive right to develop, own, operate and authorize others to operate fast food restaurants under the "Dairy Queen" name;

(f)    The License Agreement does not require that Oshlo-Wilkinson obtain ADQ's consent when transferring ownership of franchises within Oshlo-Wilkinson's territory;

(g)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee entering into a new and direct franchise agreement with ADQ;

(h)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an up front fee to ADQ;

(i)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an increased franchise fee to ADQ;

(j)    ADQ cannot condition the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon a transferee paying an increased marketing fee to ADQ;

(k)    The Iowa Franchise Act, Iowa Code Chapter, Chapter 523H governs the License Agreement that is the subject of this cause of action;

(l)    The Iowa Franchise Act, Iowa Code § 523H.5.4 prohibits ADQ from conditioning 3210 W. Broadway DQ, LLC to enter into a new and direct franchise agreement with ADQ; and

(m)    Award such further and different relief as the Court deems appropriate, under the circumstances.

## SECOND CAUSE OF ACTION – VIOLATION OF THE IOWA FRANCHISE ACT, IOWA CODE, CHAPTER 523H

39.    Plaintiff Oshlo-Wilkinson incorporates by reference each of its foregoing allegations, as if fully set forth herein.

Case 1:25-cv-00027-RGE-SBJ    Document 1-1    Filed 12/11/25    Page 23 of 40
E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

40.     Iowa Code Chapter 523H (hereinafter, the "Iowa Franchise Statutes") applies to franchise agreements entered into before July 1, 2000.

41.     ADQ violated the Iowa Franchise Statutes when it refused to process Oshlo-Wilkinson's transfer of operation rights from Oshlo-Wilkinson to 3210 W. Broadway DQ, LLC.

42.     ADQ violated the Iowa Franchise Statutes when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC entering into a new and direct franchise agreement with ADQ.

43.     ADQ violated the Iowa Franchise Statutes when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an up front fee to ADQ.

44.     ADQ violated the Iowa Franchise Statutes when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an increased franchise fee to ADQ.

45.     ADQ violated the Iowa Franchise Statutes when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an increased marketing fee to ADQ.

46.     As a direct and proximate result of ADQ's violation of the the Iowa Franchise Statutes, Oshlo-Wilkinson sustained damages in an amount to be proven at trial.

WHEREFORE Oshlo-Wilkinson prays that this Court enter an Order awarding damages to Oshlo-Wilkinson in an amount to be proven at trial, along with its costs and reasonable attorney fees as permitted by Iowa Code § 523H.13 and law.

### THIRD CAUSE OF ACTION – BREACH OF CONTRACT

47.     Plaintiff Oshlo-Wilkinson incorporates by reference each of its foregoing

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

allegations, as if fully set forth herein.

48.    The License Agreement is a valid, binding, and enforceable franchise agreement.

49.    ADQ breached the License Agreement when it refused to process Oshlo-Wilkinson's transfer of operation rights from Oshlo-Wilkinson to 3210 W. Broadway DQ, LLC.

50.    ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC entering into a new and direct franchise agreement with ADQ.

51.    ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an up front fee to ADQ.

52.    ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an increased franchise fee to ADQ.

53.    ADQ breached the License Agreement when it conditioned the transfer of ownership of a franchise within Oshlo-Wilkinson's territory upon 3210 W. Broadway DQ, LLC paying an increased marketing fee to ADQ.

54.    As a direct and proximate result of ADQ's breach of the License Agreement, Oshlo-Wilkinson sustained damages in an amount to be proven at trial.

WHEREFORE Oshlo-Wilkinson prays that this Court enter an Order awarding damages to Oshlo-Wilkinson in an amount to be proven at trial, along with its costs and reasonable attorney fees as permitted by law.

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

Dated this 11th day of November, 2025.

                                      OSHLO-WILKINSON DAIRY QUEEN, an
                                      Iowa Partnership.
                                      Plaintiff,

By:   */s/Adam J. Wachal*
             Adam Wachal, ATT0010448
             Jessica L. Weborg, ATT0013964
             KOLEY JESSEN P.C., LLO
             1125 South 103 Street, Suite 800
             Omaha, NE  68124
             (402) 390-9500
             (402) 390-9005 (facsimile)
             Adam.Wachal@koleyjessen.com
             Jessica.Weborg@koleyjessen.com
             *Attorneys for Plaintiff*

4904-9147-8905.4

10

E-FILED  2025 NOV 11 4:46 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

/s/  Harry C. Grell _____     RECORDER OF DEEDS

65647

This agreement made and entered into this__4_ day of_May_1946
between J.F.McCullough party of the first part,and_Gerald A. Lowrance_
_and Paul W. Wilkinson_____Parties of the second part

WHEREAS Hugh A.McCullough holds a contract with Harry M.
Oltz giving him the use of a certain patent on an Ice Cream freezer
in a number of states in the United States,among which is the state
of Iowa..

AND WHEREAS by virtue of said agreement, Hugh A.McCullough
has assigned to his father,J.F.McCollough the state of Iowa for
operation of the business guaranteed to him under the contract
with Harry M.Oltz,the said J.F.McCullough is now desirious of extend-
ing to the parties of the second part herein the county of Potta-
wattamie certain rights which he now owns under said contract with
Harry M.Oltz, assigned to him by Hugh A.McCullough to the said
party of the second party herein for a certain consideration.  This
consideration is the payment of $2937.26 as follows; $1468.63 cash
and the balance to be paid at the rate of 30 cents per gallon
on all the mix used, the minimum to be 4000 gallons annually until
fully paid.

The party of the second part is to have the right to
build these machines anywhere he chooses but must not move them
out of Pottawattamie County.  The parties of the second part is to
have the exclusive right to use the name "Dairy Queen" in said
county.  He also agrees to keep a record of all mix used, and to
allow either J.F.McCullough,Harry M.Oltz or their representatives
to examine these records at any time for the purpose of determin-
ing the royalties due.  Royalties to be paid monthly at the rate
of 4 cents per gallon.  All freezers are to be the property of

EXHIBIT A

- 2 -

Book 1085 Page 150

the party of the second part.  The party of the first part is
not to be liable under this contract to defend the patent which
belongs to Harry M. Oltz.

/s/  J. F. McCullough

/s/  Gerald A. Lowrance

/s/  Paul W. Wilkinson

STATE OF IOWA          )
                       )  SS
POTTAWATTAMIE COUNTY   )

On this the 17th day of March, 1953, before me, James F. Mulqueen
a Notary Public in and for Pottawattamie County, Iowa, personally
appeared Gerald A. Lowrance and Paul W. Wilkinson to me known to
be the identical persons named and who executed the foregoing in-
strument and acknowledged that they executed same as their volun-
tary act and deed.

./s/.James.F..Mulqueen............
Notary Public

(Seal)

EXHIBIT A

E-FILED 2025 NOV 17 10:36 AM POTTAWATTAMIE - CLERK OF DISTRICT COURT

**POLK COUNTY SHERIFF'S OFFICE**　　　　　　　　　　**SHERIFF KEVIN J. SCHNEIDER**



CIVIL DIVISION | 222 - 5TH AVENUE DES MOINES, IA 50309　　　SHERIFF'S OFFICE (515) 286-3800 | FAX (515) 286-3410

# RETURN OF SERVICE
### In the IA District Court for POTTAWATTAMIE COUNTY COURT

OSHLO WILKINSON DAIRY QUEEN　　　**VS**　　　AMERICAN DAIRY QUEEN CORPORATION

Sheriff #: 25045769
Case #: LACV127235
Received: 11/13/2025
Service Number: 318905

**STATE OF IOWA POLK COUNTY } §**

I certify that I served a copy of:
X Original Notice/Petition FIRST AMENDED PETITION, JURY DEMAND AND EXHIBITS

On: 11/14/2025 9:36:32 AM
To: AMERICAN DAIRY QUEEN CORPORATION by delivering a copy to JOEL KISSELL
　　　　a person at least 18 years of age described as REGISTERED AGENT
Manner Served: REGISTERED AGENT
Address of Service: 400 E Court Ave, Des Moines, IA 50309
Notes:

**Attempts**

Date: 11/14/2025 9:36:32 AM
Address: 400 E Court Ave, Des Moines, IA 50309
Note:

| **FEES** | | **Kevin J Schneider, Sheriff of Polk County, Iowa** |
|---|---|---|
| | **Total: $31.40** | |

Deputy/Server: Patrick Adamovicz

Entered by Steven Matzke - 11/17/2025 10:09:45 AM.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT FOR POTTAWATTAMIE COUNTY IOWA

| | |
|---|---|
| **OSHLO-WILKINSON DAIRY QUEEN,** an Iowa Partnership,<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**AMERICAN DAIRY QUEEN CORPORATION,**<br><br>     **Defendant.** | Case No. LACV127235<br><br>**DEFENDANT AMERICAN DAIRY QUEEN CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES** |

Defendant American Dairy Queen Corporation ("ADQ"), by and through its attorneys, hereby responds to Plaintiff Oshlo-Wilkinson Dairy Queen's First Amended Petition ("Petition") as follows. Except as expressly admitted or qualified hereafter, ADQ denies each and every allegation of the Petition.

### PARTIES

1.     ADQ lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Petition and therefore denies them.

2.     ADQ admits the allegations in paragraph 2 of the Petition.

### JURISDICTION

3.     Paragraph 3 of the Petition contains conclusions of law to which no response is required. To the extent a response is deemed required, ADQ does not contest that jurisdiction is proper under Iowa Code Section 602.6101. ADQ lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and therefore denies them.

4.     Paragraph 4 of the Petition contains conclusions of law to which no response is required. To the extent a response is deemed required, ADQ does not contest that venue is proper

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

under Iowa Code Section 616.7.

## FACTUAL BACKGROUND

5.        ADQ admits, on information and belief, that in 1939 the McCulloghs and Harry Oltz entered into an agreement in which Oltz extended manufacturing rights to the McCulloughs for the use of Oltz's patented freezer, as well as rights for exclusive use of the machines in Illinois, Wisconsin, and the states west of the Mississippi River. Except as expressly admitted herein, ADQ denies the allegations in paragraph 5 of the Petition.

6.        The allegations in paragraph 6 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them. ADQ admits that it is the successor in interest to J. F. McCullough under the 1946 Agreement.

7.        The allegations in paragraph 7 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

8.        With respect to the allegations in paragraph 8 of the Petition, ADQ admits that Gerald A. Lowrance and Paul W. Wilkinson opened a DQ® restaurant in Pottawattamie County, Iowa, pursuant to the 1946 Agreement. ADQ denies the remaining allegations in paragraph 8.

9.        The allegations in paragraph 9 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them. ADQ lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 of the Petition and therefore denies them.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

10.     With respect to the allegations in paragraph 10 of the Petition, ADQ admits that Douglas and Elizabeth Oshlo entered into an agreement dated March 31, 1986, with Gerald A Lowrance ("1986 Assignment") relating to the 1946 Agreement, the terms of which assignment speak for themselves. ADQ lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 10 and therefore denies them.

11.     ADQ lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 11 of the Petition related to the formation of the Oshlo-Wilkinson partnership and therefore denies them. ADQ denies the remaining allegations in paragraph 11.

12.     With respect to the allegations in paragraph 12 of the Petition, ADQ admits there is a DQ® Restaurant located at 3210 W. Broadway, Council Bluffs, Pottawattamie County, Iowa (the "Broadway Restaurant"), which Restaurant opened in 1994. ADQ lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 12 and therefore denies them.

13.     With respect to the allegations in paragraph 13 of the Petition, ADQ admits that it has assigned store number #19071 to the Broadway Restaurant. Except as expressly admitted, ADQ denies the remaining allegations in paragraph 13.

14.     ADQ lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 14 of the Petition and therefore denies them.

15.     ADQ lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 15 of the Petition and therefore denies them.

16.     With respect to the allegations in paragraph 16 of the Petition, ADQ admits that on or about January 13, 2025, Cynthia Wilkinson Lakatos contacted ADQ on behalf of Oshlo-

E-FILED 2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

Wilkinson via email with the subject line "DQ Store Transfer #19071." Except as expressly admitted, ADQ denies the remaining allegations in paragraph 16.

17.     With respect to the allegations in paragraph 17 of the Petition, ADQ admits that it advised Oshlo-Wilkinson that it did not have the right to sublicense the DQ® marks or system. Except as expressly admitted, ADQ denies the allegations in paragraph 17.

18.     With respect to the allegations in paragraph 18 of the Petition, ADQ admits that it advised Oshlo-Wilkinson that it did not have the right to sublicense the DQ® marks or system. Except as expressly admitted, ADQ denies the allegations in paragraph 18.

19.     ADQ lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Petition, and therefore denies them.

20.     The allegations in paragraph 20 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

## COUNT I: DECLARATORY JUDGMENT

21.     ADQ incorporates by reference all admissions, denials, and other statements contained in this Answer.

22.     The allegations in paragraph 22 of the Petition contain conclusions of law to which no response is required. To the extent that a response is required, ADQ states that Iowa Rule of Civil Procedure 1.1101, *et seq.*, speak for themselves.

23.     Paragraph 23 of the Petition contains conclusions of law to which no response is required.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

24.     Paragraph 24 of the Petition contains conclusions of law to which no response is required. To the extent that a response is required, ADQ states that Iowa Code § 523H.5 speaks for itself.

25.     Paragraph 25 of the Petition contains conclusions of law to which no response is required. To the extent that a response is required, ADQ states that Iowa Code § 523H.5.4 speaks for itself.

26.     With respect to the allegations in paragraph 26 of the Petition, ADQ admits that the 1946 Agreement is a binding and enforceable contract between the parties thereto and/or their successors in interest. ADQ further responds that the contents of that agreement speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

27.     Paragraph 27 of the Petition contains conclusions of law to which no response is required.

28.     Paragraph 28 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ denies the allegations in paragraph 28.

29.     The allegations in paragraph 29 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them. ADQ further responds that paragraph 29 of the Petition contains conclusions of law to which no response is required.

30.     The allegations in paragraph 30 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

31.    The allegations in paragraph 31 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them. ADQ denies the remaining allegations in paragraph 31.

32.    The allegations in paragraph 32 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

33.    The allegations in paragraph 33 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

34.    The allegations in paragraph 34 of the Petition refer to a document (the 1946 Agreement), the contents of which speak for themselves. To the extent that the allegations stand for or are intended to stand for additional or inconsistent propositions, ADQ denies them.

35.    Paragraph 35 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ denies the allegations in paragraph 35.

36.    Paragraph 36 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ denies the allegations in paragraph 36.

37.    Paragraph 37 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ denies the allegations in paragraph 37.

38.    Paragraph 38 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ denies the allegations in paragraph 38.

ADQ denies that Plaintiff is entitled to any relief sought in Count 1 of the Petition.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## COUNT II: VIOLATION OF THE IOWA FRANCHISE ACT, IOWA CODE, CHAPTER 523H

39.    ADQ incorporates by reference all admissions, denials, and other statements contained in this Answer.

40.    Paragraph 40 of the Petition contains conclusions of law to which no response is required. To the extent a response is required, ADQ states that Iowa Code Chapter 523H speaks for itself and otherwise denies the allegations in paragraph 40.

41.    ADQ denies the allegations in paragraph 41 of the Petition.

42.    ADQ denies the allegations in paragraph 42 of the Petition.

43.    ADQ denies the allegations in paragraph 43 of the Petition.

44.    ADQ denies the allegations in paragraph 44 of the Petition.

45.    ADQ denies the allegations in paragraph 45 of the Petition.

46.    ADQ denies the allegations in paragraph 46 of the Petition.

ADQ denies that Plaintiff is entitled to any relief sought in Count 2 of the Petition.

## COUNT III: BREACH OF CONTRACT

47.    ADQ incorporates by reference all admissions, denials, and other statements contained in this Answer.

48.    With respect to the allegations in paragraph 48 of the Petition, ADQ admits that the 1946 Agreement is a valid and enforceable agreement.

49.    ADQ denies the allegations in paragraph 49 of the Petition.

50.    ADQ denies the allegations in paragraph 50 of the Petition.

51.    ADQ denies the allegations in paragraph 51 of the Petition.

52.    ADQ denies the allegations in paragraph 52 of the Petition.

53.    ADQ denies the allegations in paragraph 53 of the Petition.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

54.     ADQ denies the allegations in paragraph 54 of the Petition.

ADQ denies that Plaintiff is entitled to any relief sought in Count 3 of the Petition.

## **AFFIRMATIVE DEFENSES**

ADQ asserts the following affirmative defenses in response to the allegations and claims asserted in the Petition. ADQ reserves the right to amend or supplement its defenses as additional information is made available to it during litigation:

1.     The Petition, in whole or in part, fails to state a cause of action upon which relief may be granted.

2.     ADQ acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it so acted.

3.     The claims are barred by the terms of the relevant agreements.

4.     Plaintiff's breach of contract claim fails, in whole or in part, because Plaintiff failed to perform all conditions precedent to ADQ's performance or because Plaintiff failed to perform under or comply with the terms of the relevant agreement(s), releasing ADQ from any performance obligations under the agreement(s).

5.     Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, waiver, or unclean hands.

6.     Plaintiff's claims are barred, in whole or in part, because ADQ did not breach or violate its legal duties, if any, owed to Plaintiff.

7.     Plaintiff's claims fail because Plaintiff has suffered no compensable damages.

8.     If Plaintiff was damaged in any amount, Plaintiff has failed to mitigate its damages and, therefore, is barred from recovery, or any award of damages to Plaintiff must be proportionately diminished.

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

9.    Plaintiff's request for an award of attorneys' fees and costs fails because there is no basis on which Plaintiff is entitled to recover such an award from ADQ.

10.    Plaintiff's claims are barred because Iowa's franchise laws cannot be retroactively applied to the 1946 Agreement.

11.    Plaintiff's claims are barred because application of Iowa's franchise laws would violate the Contract Clause of the federal and Iowa Constitutions.

## PRAYER FOR RELIEF

Defendant respectfully requests that this Court deny all relief sought by Plaintiff, dismiss with prejudice the Petition and each of Plaintiff's claims against Defendant, award to Defendant the costs, attorneys' fees, and expenses incurred in responding to the Petition and in defending this suit, and grant to Defendant any other relief that this Court deems just and proper.

Dated: December 4, 2025

Respectfully submitted,

*/s/ Elizabeth J. Carter*
Elizabeth J. Carter, AT0012802
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Tel: (515) 248-9000
Fax: (515) 248-9010
*Elizabeth.Carter@faegredrinker.com*

*Attorney for Defendant*

E-FILED  2025 DEC 04 4:00 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following attorneys of record:

Adam Wachal
Jessica Weborg
KOLEY JESSEN P.C., LLO
1125 South 103 Street, Suite 800
Omaha, Nebraska 68124
Tel: (402) 390-9500
Fax: (402) 390-9005
*adam.wachal@koleyjessen.com*
*jessica.weborg@koleyjessen.com*

*Attorneys for Plaintiff*

*/s/ Elizabeth J. Carter*

E-FILED          LACV127235 - 2025 DEC 05 08:50 AM          POTTAWATTAMIE
CLERK OF DISTRICT COURT          Page 1 of 2

## IOWA DISTRICT COURT IN AND FOR POTTAWATTAMIE  COUNTY

| | |
|---|---|
| OSHLO WILKINSON DAIRY QUEEN<br><br>VS.<br><br>AMERICAN DAIRY QUEEN | CASE NO: 04781  LACV127235<br><br>**NOTICE OF CIVIL TRIAL-<br>SETTING CONFERENCE**<br>**(Use of this form is mandatory.)** |

To the parties or their attorneys of record:

In accordance with Iowa Rule of Civil Procedure 1.906, notice is hereby given that a  * **Trial Scheduling Conference is scheduled on 01/13/2026 at 03:30 PM (Telephonic ONLY: please call at the DIRECTIONS BELOW INDICATED FOR SCHEDULING CONFERENCE.**
*This date shall be no earlier than 35 days after and not later than 50 days after any Defendant/ Respondent has answered or appeared unless set sooner by special order on application of one or more parties.

This conference shall be held:

**By telephone with Court Administration's conference line.  All Attorneys/Pro Se Parties shall contact the court at 1-877-304-9269 then enter conference code 527612 with Olivia Smith, Deputy Court Administrator, when prompted.**        Attorneys for all parties appearing in the case shall participate at this conference.  Parties not represented by  counsel shall participate in this conference.

 **Recording or rebroadcasting of a court proceeding held by video or telephone conference, including pictures, screenshots, or other visual or audio copying, is prohibited absent an expanded news media coverage order. Any violation may result in contempt of court or other sanctions. Please note judicial branch staff may be recording this proceeding.**

At this trial-setting conference, every case will be set for trial within the time periods provided by Iowa Court Rules Chapter 23, Time Standards for Case Processing.

## Prior to the trial-setting conference, the parties must file a Trial Scheduling and Discovery Plan, Iowa Court Rule 23.5-Form 2 (Form 3 for Expedited Civil Actions).

 In judicial districts that allow it, the parties may, in lieu of holding a trial-setting conference, first file their Trial Scheduling and Discovery Plan and then, prior to the date scheduled for the trial-setting conference, obtain a trial date from court administration  that complies with the provisions of Chapter 23.  The date will be entered by the Court on the Trial Scheduling and Discovery Plan.

The trial date that is agreed upon at this conference shall be a firm date.  Continuances will not be granted, even if all parties agree, unless for a crucial cause that could not have been foreseen.

The Clerk of Court shall notify all counsel of record and parties not represented by counsel.

/s/  Kiersten Burnham, Judicial Operations Coordinator
712-328-4714

If you need assistance to participate in court due to a disability, call the disability coordinator at (712) 328-4753 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**